### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NICHOLAS F. DICROCE, JR.,<br>                    Plaintiff,<br><br>        v.<br><br>DIRK KEMPTHORNE, SECRETARY,<br>DEPARTMENT OF INTERIOR<br>                    Defendant. | Civ. No. 06-5173 |

### MEMORANDUM

June 20, 2008

Plaintiff Nicholas DiCroce brings this, his second, employment discrimination suit against his former employer, the Secretary of the Department of the Interior.  The instant action concerns workplace events that are alleged to have occurred on or up to May 14, 2004.  (Mr. DiCroce is precluded, by his previous action against defendant, from raising claims based on events occurring prior to this date.  *See* docket # 23.)  Before the court is defendant's motion for summary judgment on all remaining claims in this case.  Docket # 31.  For the reasons set forth below, the motion will be granted.

### I.      Background

Mr. DiCroce, an Italian American, worked for more than 34 years for the Northeast Region of the National Park Service, an agency under the aegis of the

Department of the Interior.  During the relevant period, Mr. DiCroce worked as a

Cartographic Technician in the Philadelphia office of the Northeast Region's Realty

Division (also referred to in the submissions as the "Lands Division").  He and a

colleague, Barry Ruley, were the only two Cartographic Technicians employed by the

Northeast Region's Realty Division.  Def. Exh. 2.  Messrs. DiCroce's and Ruley's

immediate supervisor was Nancy K. Russell, a Supervisory Cartographer.  *Id.*

　　　　While working for the Park Service, Mr. DiCroce testified before an EEO

Counselor who was investigating a complaint filed by one of his co-workers.  Def. Exh. 1

at 58-59.  Mr. DiCroce also filed, on his own behalf, (1) an EEO complaint in 2003,

alleging claims that underlay his first suit against the District, and (2) a second EEO

complaint in August 2005, alleging further instances of discrimination, based on Mr.

DiCroce's Italian-American origin, and retaliation, for Mr. DiCroce's participation in

EEO activity.  Mr. DiCroce filed a third EEO complaint on July 31, 2006, which raised

the claims that form the basis of his opposition to defendant's instant motion.  In this third

complaint, Mr. DiCroce charges that defendant retaliated against him for his earlier EEO

activities by forcing him to retire.  Def. Exh. 20.

　　　　In moving for summary judgment, defendant has submitted evidence detailing the

circumstances of Mr.DiCroce's retirement.  This evidence, if credited, establishes the

following:

　　　　In 2006, Mr. DiCroce's Cartographic Technician position was eliminated as part of

a structural reorganization of the National Park Service staff.  According to defendant's submissions, this reorganization was precipitated by Congressional cuts to the portion of the National Park Service budget that funded the Northeast Region's two Cartographic Technician positions.  Def. Exh. 22.  Specifically, in March 2004, the National Park Service's Deputy Director informed the Regional Directors that Congress reduced its appropriation for the National Park Service's lands administration programs, which funded the cartography positions in the agency's regional offices.  Def. Exh. 23.  To determine how it would operate within these budgetary constraints, the National Park Service convened a task force to develop options for reorganizing the staffing of those positions in the agency's regional offices that were funded by the lands programs.  Def. Exh. 22; Def. Exh. 24 ("White Paper") at 3-17.  In December 2004, the Director of the National Park Service, headquartered in Washington, DC, directed the implementation of one of the task force's proposals.  This reorganization directive called for the elimination of six positions in the Northeast Region's Lands Resources Division, including the Northeast Region's two Cartographic Technician positions in Philadelphia.  Def. Exh. 24 (Director Mem.) at 1-2; Def. Exh. 26.  The Director's reorganization directive advised that, if possible, the regional offices should avoid terminating the employment of the individuals in the eliminated positions by (1) implementing "voluntary early retirement authority" (VERA), which entitles selected employees to retire and receive a monthly annuity before they would ordinarily be eligible to do so, (2) providing "voluntary

separation incentive payments" (VSIP) to selected employees, which consist of lump-sum payments given to employees in exchange for resigning or, if eligible, retiring from federal service, and (3) reassigning employees to other positions in the National Park Service. Def. Exh. 24 (Director Mem.) at 1-2; Def. Exh. 29 at 1.

In June 2005, pursuant to the reorganization directive, every permanent employee of the National Park Service's Land Resources Program, in every regional office, was permitted to apply for early retirement (under VERA) or for a $25,000 lump-sum payment (under VSIP) in exchange for retiring or resigning from service. Def. Exh. 29 at 1. By January 5, 2006, Mr. DiCroce had not applied for VSIP.[1] The Associate Regional Director for the Northeast Region sent Mr. DiCroce a memorandum informing him that the deadline for applying for VERA or VSIP, which had once been extended, was approaching. The memorandum cautioned that "[g]iven the fact that the funds for your current position will be eliminated, you will be assigned to another funded position within the region which has yet to be identified. This reassignment could be to a position either within or outside the commuting area depending on the position." Def. Exh. 31. The deadline lapsed without Mr. DiCroce having applied for VSIP. Three of the six other employees in the Northeast Region whose positions were being eliminated, including Mr. Ruley, the other Cartographic Technician in the Northeast Region's Realty Division,

---

[1] It appears from the parties' submissions that, despite defendant's assertion to the contrary, Mr. DiCroce, who worked for the National Park Service for 34 years, was 55 years old in 2006, and thus eligible for retirement regardless of VERA. *See* Def. Exh. 3;

applied for VERA or VSIP.  Def. Exh. 26.

The supervisor of the Northeast Region's Realty Division, Pamela McClay, then began searching for positions to place those three employees, Mr. DiCroce among them, whose positions were being eliminated and who did not apply for VERA or VSIP.  Def. Exh. 26.  Following this search, Chrysandra Walter, the Northeast Region's Associate Regional Director for Parks and Operations, reassigned one of these employees, a Realty Specialist, to a different position for which she was qualified (legal instrument examiner) in the Northeast Region's Philadelphia office.  The second employee, also a Realty Specialist, was reassigned to a Realty Specialist position in West Virginia.  *Id.*  For Mr. DiCroce, the only one of the three employees who was a Cartographic Technician, Ms. McClay identified an available Cartographic Technician position at Fire Island National Seashore in Long Island, New York.  Ms. McClay attested that this was the only position she identified for which Mr. DiCroce was qualified.  *Id.*

On June 8, 2006, Chrysandra Walter sent a memorandum to Mr. DiCroce reassigning him to the Fire Island Position.  Def. Exh. 36.  The memorandum explained that Mr. DiCroce's reassignment to this position "[wa]s necessary because of extensive mapping needs at FIIS that require collection of property data and to review survey work or contracts."  *Id.*  It further stated: "If you decide not to accept the reassignment, you may apply for discontinued service retirement or your removal will be initiated under 5 CFR 752 (adverse action regulations) for failure to report as directed."  *Id.*

The memorandum instructed Mr. DiCroce to complete an attached form stating whether he would (1) accept the reassignment, (2) apply for "discontinued service retirement" in lieu of accepting the reassignment, or (3) decline to accept the reassignment and be removed from his position.  Mr. DiCroce altered the language of the form and submitted a response, with two signatures dated June 23, 2006, that read as follows:

> As I explained in my letter to Division Chief Pam McClay, dated 1/12/2006, I cannot accept the directed reassignment effective July 23, 2006, to the position of Cartographic Technician at Fire Island National Seashore, due to family obligations and other reasons set out in my letter. . . .
> Since I cannot accept the reassignment noted above, I have been forced to apply for Discontinued Service Retirement.

Def. Exh. 38.

 Mr. DiCroce's retirement became effective on July 31, 2006.  Def. Exh. 37.

## II.    Analysis

Defendant moves for summary judgment as to count one of plaintiff's complaint, discrimination on the basis of national origin, and count two of the complaint, unlawful retaliation.  Both of these counts are brought under Title VII of the Civil Rights Act.  42 U.S.C. §§ 2000e *et seq.* (§ 2000e-16 extends coverage of Title VII to federal agency employees).  Summary judgment is warranted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

In opposing defendant's motion for summary judgment, plaintiff contends that defendant forced him to retire and, in doing so, discriminated against him on the basis of his Italian American origin and retaliated against him for activities protected under Title VII.[2]  These claims are evaluated under the familiar *McDonnell Douglas* framework. *Storey v. Burns Intern. Security Services*, 390 F.3d 760 (3d Cir. 2004); *Marra v. Phila. Housing Auth.*, 497 F.3d 286, 300 (3d Cir. 2007).  Once a plaintiff has established a prima facie case, the defendant must produce evidence of a legitimate, non-discriminatory or non-retaliatory reason for the adverse employment action. The plaintiff then bears the burden of producing evidence that the stated reason is pretextual.

---

[2] It appears that plaintiff has abandoned other cognizable claims.  In addition to his claim of forced retirement, Mr. DiCroce alleged other instances of discrimination and retaliation in his complaint, including the uneven application of performance standards and verbal harassment.  Docket # 1 at ¶¶ 13, 16.  In its June 2007 order, precluding plaintiff from asserting claims based on events that occurred on or up to May 14, 2004, the court held that, in addition to the forced retirement claim set out in plaintiff's third EEO complaint, plaintiff could still pursue certain claims set out in his second EEO complaint.  Defendant addressed each of these claims in moving for summary judgment, and submitted affidavits, depositions, and other evidence showing that the claims lack foundation.  *See* Fed. R. Civ. P. 56(e)(1).  In his opposition papers, plaintiff addressed only the forced resignation claim.  The court therefore concludes that, insofar as plaintiff has raised other claims, they have been abandoned.  *See* Fed. R. Civ. P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, . . . [the opposing party's] response must . . . set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.").

A.      **Discrimination Claim**

1.

As a threshold matter, the parties disagree on the appropriate standard for evaluating whether plaintiff has established his prima facie case of discrimination. Plaintiff urges the court to apply the *McDonnell Douglas* test appropriate in reduction-in-force cases.   Under this standard, "to demonstrate a prima facie case . . . , 'the plaintiff must show he was in the protected class, he was qualified, he was laid off and other unprotected workers were retained.'"  *Marzano v. Computer Science Corp., Inc.*, 91 F.3d 497, 506 (3d Cir. 1996) (quoting *DiBiase v. SmithKline Beecham Corp.*, 48 F.3d 719, 723 n.2 (3d Cir. 1995) (internal quotation omitted)).  Defendant contends that application of this test is inappropriate because Mr. DiCroce was offered a new position after his was eliminated, albeit one that would require him to relocate, and thus was not "laid off."[3]

The distinction that defendant identifies is immaterial for *McDonnell Douglas* purposes.  As the Third Circuit recently reiterated,  "'the elements of [a] prima facie case must not be applied woodenly, but must rather be tailored flexibly to fit the circumstances

_____

[3] Defendant proposes an alternative test for determining whether plaintiff has established a prima facie case.  This test would require plaintiff to show that he was "treated differently from other similarly situated persons outside his class."  Docket # 31 at 18.  In *Marzano*, the court held that, in reduction-in-force cases, plaintiff is not required to show that "similarly situated" employees were retained in order to establish a prima facie case of discrimination.  91 F.3d at 510-11.  Defendant cites no cases, and provides no rationale, supporting his position  that, in forced termination cases, plaintiffs must have the burden of alleging and advancing support for a 'similarly situated' ingredient in establishing a prima facie case of discrimination under *McDonnell Douglas*.

of each type of illegal discrimination.'" *Doe v. C.A.R.S. Protection Plus, Inc.*, --- F.3d---,

Ct. Appeals No. 06-5408, slip op. at 15 (3d Cir. May 28, 2008) (quoting *Geraci v. Moody*

*Tottrup, Int'l, Inc.*, 82 F.3d 578, 581 (3d Cir. 1996)).  The elements should thus be

tailored to determine whether a plaintiff has met his evidentiary burden at the first stage

of *McDonnell Douglas*, which is "to demonstrate to the court that [the] plaintiff's factual

scenario is compatible with discriminatory intent — *i.e.*, that discrimination *could* be a

reason for the employer's action."  *Marzano*, 91 F.3d at 508.  In reduction-in-force cases,

the determination that a plaintiff was "laid off" merely "establishes that [the plaintiff]

suffered an adverse employment action."  *Marzano*, 91 F.3d at 508.

Here, plaintiff contends that he suffered an adverse employment action when

defendant forced him to either relocate from Philadelphia, retire, or be removed from his

position.  This employment decision was made in the context of a nationwide structural

reorganization of the National Park Service, which resulted in the elimination of Mr.

DiCroce's position in Philadelphia.  The test set forth in *Marzano* is geared to

determining whether an employee in a protected class has been treated differently than

other employees in the wake of a systemic reduction in the workforce.  Application of this

test to Mr. DiCroce's discrimination claim will enable the court to determine whether

plaintiff has put forth a "factual scenario [that] is compatible with discriminatory intent."

The *Marzano* test thus provides an appropriate framework for evaluating Mr. DiCroce's

discrimination claim.

2.

Applying *Marzano*, I conclude that plaintiff has set forth a prima facie case of discrimination by showing that "he was in the protected class, he was qualified, he was laid off" (or, as discussed above, otherwise suffered an adverse employment action relating to the workforce reduction), " and other unprotected workers were retained." *Marzano*, 91 F.3d at 506 (internal quotation marks omitted).  First, as defendant concedes, Mr. DiCroce, an Italian-American, is a member of a protected class.  Docket # 31 at 19.  Second, the parties' submissions, which include positive evaluations of Mr. DiCroce's work performance, show that there is a genuine issue of material fact as to whether Mr. DiCroce was qualified for his position.  Def. Exh. 10.

Third, there is a genuine issue of material fact as to whether Mr. DiCroce suffered an adverse employment action.  Plaintiff's retirement, if involuntary, could constitute an adverse employment action, as it effected "material change in the terms or conditions of [plaintiff's] employment."  *Weston v. Pennsylvania*, 251 F.3d 420, 431 (3d Cir. 2001).  Defendant argues that Mr. DiCroce's retirement was voluntary.  Notably, however, on being reassigned to a position outside his commuting area, Mr. DiCroce was given the option of applying for "discontinued service retirement," which, according to a Department of Interior policy manual, is provided to agency "employees who are separated against their will."  U.S. Office of Personnel Management, Civil Service Retirement System Handbook, § 44A1-1.  Moreover, if plaintiff had not retired, he would

have been terminated from his position or forced to relocate to Long Island.  This

relocation, for the purpose of working in a position comparable to plaintiff's eliminated

position in Philadelphia, would have effected a "material change in the terms or

conditions of [plaintiff's] employment."  A factfinder could thus conclude from the

record that, when being given the option of retiring, plaintiff was not presented with an

alternative that would not have constituted an adverse employment action.

Concomitantly, a factfinder could conclude that plaintiff's retirement was involuntary

and, for *McDonnell Douglas* purposes, constituted an adverse employment action.

Turning to the fourth element of plaintiff's prima facie case under *Marzano*, the

record shows that other unprotected workers were retained while plaintiff was forced to

retire.  At least one Land Resources employee whose position had been eliminated, Tracy

Allen, was offered a position in the Philadelphia office.  Def. Exh. 26.  According to

plaintiff's submissions, Mr. DiCroce was the only employee of Italian heritage working in

the Philadelphia Office.  Pl. Exh. B, DiCroce Decl. at ¶ 8.  It follows that at least one

worker outside Mr. DiCroce's protected class did not suffer the adverse employment

action to which Mr. DiCroce was subjected.  I therefore conclude that plaintiff has

established a prima facie case of discrimination.

> **3.**

The plaintiff having met his evidentiary burden at the stage of *McDonnell*

*Douglas*, the burden switches to the employer, who must proffer an alternative

explanation for treating plaintiff differently from unprotected employees.  I conclude that

defendant has met this burden by showing that there were legitimate reasons underlying

Mr. DiCroce's reassignment.  Through evidence including affidavits, deposition

testimony, and internal memoranda, defendant has shown that plaintiff's position was

eliminated as part of a nationwide structural reorganization of the National Park Service.

This reorganization was implemented at the behest of the agency's director,

headquartered in the District of Columbia, and was compelled by cuts in the agency's

budget.  According to defendant's submissions, plaintiff's supervisors reassigned plaintiff

to the only position for which he was qualified that was available in the Northeast Region

following the reorganization.  These submissions make clear that plaintiff's national

origin was not among the reasons for the nationwide structural reorganization of the

National Park Service, or for defendant's decision, pursuant to this reorganization, to

reassign plaintiff to Long Island or force his retirement.

  **4.**

  The defendant having met his burden of production at the second stage of

*McDonnell Douglas*, it is incumbent on plaintiff to demonstrate that defendant's

proffered, nondiscriminatory reason is pretextual.  At this stage, "[t]he presumption of

discrimination established by [plaintiff's] *prima facie* showing 'simply drops out of the

picture.'"  *C.A.R.S.*, slip op. at 33 (quoting *St. Mary's Honor Ctr. v. Hick*, 509 U.S 502,

511 (1993).

Plaintiff can meet his burden at this stage of *McDonnell Douglas* by submitting

evidence that "1) casts doubt upon the legitimate reason proffered by the employer such

that a fact-finder could reasonably conclude that the reason was a fabrication; or (2)

would allow the fact-finder to infer that discrimination was more likely than not a

motivating or determinative cause of the employee's termination." *Id.*  In the instant case,

plaintiff has presented no evidence that could support either conclusion.  Defendant has

put forth a wealth of evidence showing that the National Park Service's decision to

reassign plaintiff or compel his separation from employment was made for reasons other

than plaintiff's national origin.  The record provides no evidence showing that, in light of

the elimination of his position, defendant could have spared plaintiff the choice between

reassignment, retirement, or removal.

In undertaking to cast doubt on defendant's proffered reason for reassigning him,

plaintiff suggests that he could have been permitted to perform the work for the  Fire

Island position from his home.  Defendant's submissions show, however, that (1) the

position to which he was reassigned required that the defendant work on-site, (2) no

cartography positions have ever been performed from home, and, most critically, (3) the

decision whether to permit plaintiff to work from home would have to have been made by

plaintiff's prospective supervisor at Fire Island, and, therefore, the decision was outside

the hands of the individuals who initially reassigned plaintiff.  Def. Exh. 16 (McClay

Dep.) at 47; Def. Exh. 26.  Plaintiff offers no other grounds for doubting that defendant

-13-

proffered legitimate and non-pretextual reasons for his actions.

Accordingly, the court will award summary judgment to defendant as to plaintiff's discrimination claim.

A.      **Retaliation Claim**

Plaintiff's retaliation claim likewise fails at the third stage of the *McDonnell Douglas* analysis.  To set forth a prima facie case of retaliation, a plaintiff must point to evidence showing "'(1) protected employee activity; (2) adverse action by the employer, either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action.'"  *Marra*, 497 F.3d at 300 (quoting *Fogelman v. Mercy Hospital, Inc.*, 283 F.3d 451, 567-68 (3d Cir. 2002).  Defendant concedes that plaintiff, who participated in EEO activities, established the first of these factors.  Furthermore, for the reasons above, the court concludes that, in forcing plaintiff to relocate or to separate from employment, defendant, engaged in an adverse employment action.

However, regardless of whether plaintiff can set forth evidence showing a causal connection between this adverse employment action and his protected activity, thus completing his prima facie case at the first stage of *McDonnell Douglas*, defendant has met his burden at the second stage by advancing a legitimate, non-retaliatory reasons for the adverse employment action.  Specifically, as addressed above, defendant has shown that the National Park Service's actions against plaintiff were the product of the structural

reorganization of the agency, and that plaintiff was reassigned to the only position in the

Northeast Region for which he was qualified.  Plaintiff presented no reasons, and

submitted no evidence, that this proffered reason is pretextual.  Defendant's evidence

would thus convince any reasonable fact-finder that his actions against plaintiff were

motivated by the demands of the agency's structural reorganization, and were not made

on a retaliatory basis.  Therefore, the court will enter summary judgment in favor of

defendant as to plaintiff's retaliation claim.

**III.  Conclusion**

       Defendant's submissions carefully detail the circumstances of Mr. DiCroce's

separation from his employment.  Plaintiff has produced no evidence that the employment

decisions that led to his separation were made on the basis of Mr. DiCroce's Italian

American descent, or were the fruit of retaliatory animus.  In the absence of such

evidence, the record does not present a genuine issue of material fact as to whether

defendant's decisions were improper under Title VII.  Accordingly, the court will grant

defendant's motion for summary judgment.  An appropriate order of judgment follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NICHOLAS F. DICROCE, JR.,
                    Plaintiff,

      v.                                                    Civ. No. 06-5173

DIRK KEMPTHORNE, SECRETARY,
DEPARTMENT OF INTERIOR
                    Defendant.

## ORDER

June 20, 2008

    For the reasons set forth in the accompanying memorandum, defendant's motion

for summary judgment, docket # 31, is GRANTED.


                        BY THE COURT:


                        /s/ Louis H. Pollak

                        Pollak, J.